# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

In re:

MOHAJER 12 CORP.,

Debtor.

CASE No. 18-2674-JCO

Chapter 11

## MEMORANDUM ORDER AND OPINION
## DENYING APPLICATION FOR INJUNCTIVE RELIEF

This matter came before the Court January 5, 2021 on the Application of Debtor, Mohajer 12 Corp.("Mohajer") for Temporary Restraining Order and Preliminary Injunction (Doc. 299) as Amended (Doc. 302) and the Motion to Strike and Objection thereto by PNC Bank N.A.("PNC") (Doc.301) as amended (Doc. 305).[1] Appearances were noted by Husain Abdulla as principal of the Debtor, Attorney Barry A. Friedman as counsel for the Debtor, Attorney Heather Jamison as counsel for PNC, Mark S. Zimlich as the Bankruptcy Administrator and Jason M. Osborn as the state court receiver. Having considered the record, pleadings, and arguments of counsel, the Court finds that Mohajer's Amended Verified Application for Temporary Restraining Order and Preliminary Injunction (Doc. 301) is due to be and is hereby DENIED for the reasons set forth below.

### PROCEDURAL HISTORY AND FINDINGS OF FACT

The Debtor administered a prior Chapter 11 proceeding before this Court (Case No. 14-176) which was closed by Final Decree on April 4, 2016 ("Prior Case"). Mohajer's contractual obligations to PNC, related to mortgage indebtedness on three commercial properties, arose before the Prior Case. Pursuant to the terms of the Debtor's Plan in the Prior Case, Mohajer executed a term note ("Note")

---

[1] The Court also noted an Objection (Doc. 313) filed by Jason M. Osborn at 4:58 p.m. local time the evening before the hearing and as the Debtor's Application is due to be denied for the reasons noted herein, the Court does not find it necessary to contemplate Osborn's Objection.

1

with PNC requiring fifty-nine (59) monthly payments of $9661.00 and a balloon upon the maturity date of January 1, 2021. (Doc. 189 at 12-18). The Debtor defaulted on the Note in June 2017 by failing to make timely payments. (Affidavit of Nikki Holladay, *Id.* at 10). Due to the continuing default, PNC instituted a state court receivership proceeding in June 2018. (Doc. 310 at 2). Mohajer filed the instant Chapter 11 bankruptcy case on July 3, 2018. Mohajer consented to relief from the automatic stay as to two of the three properties secured by the PNC mortgage indebtedness (Doc. 52) and sought to maintain only the property located at 507 Azalea Road ("Azalea Property"). The Azalea Property is a commercial property operated as a convenience store.

As a result of the Debtor's failure to file a viable plan of reorganization after the passage of more than eighteen (18) months, PNC filed a Motion for Relief ("MLS") from the automatic stay seeking to place the Azalea Property in the state court receivership along with the other two properties for which relief was previously granted. (Doc. 189). The MLS hearing was passed several times at the request of the parties and was ultimately set for hearing on July 16, 2020. The principal of the Debtor, Husain Abdulla ("Abdulla"), was present and after discussions between the parties, counsel jointly informed the Court of a negotiated resolution and announced the terms thereof which were acknowledged by Abdulla. As such, the Court approved the agreement of the parties memorialized by an Agreed Order. (Doc.256).

The Agreed Order required among other things, that the Debtor: (1) redeem the Azalea Property from tax sale before August 17, 2020; (2) remit to PNC the greater of (i) Five Thousand and 00/100 Dollars ($5000.00) or (ii) all remaining cash collateral on a monthly basis; (3) file a renewed cash collateral motion upon the expiration of the existing authorization on November 17, 2020 and (4) within 90 days of redemption from the tax sale, file a Disclosure Statement and Plan containing terms and conditions approved by PNC. The Agreed Order further provided that upon Debtor's

2

failure to comply with the terms thereof, PNC would have immediate relief from the automatic stay without further notice or hearing upon filing a notice of non-compliance.

It is undisputed that the Debtor did not comply with all the deadlines set out in the Agreed Order. Specifically, construing the deadlines most favorably to the Debtor, a plan should have been filed no later than November 16, 2020 and a cash collateral motion should have been filed no later than November 17, 2020. PNC filed its Notice of Non-Compliance on November 25, 2020, setting forth the Debtor's failure to timely file a plan and disclosure statement, failure to communicate with PNC regarding approval of proposed terms and conditions of an amended plan and failure to obtain approval to use cash collateral after November 17, 2020. (Doc. 281). Thereafter, the Debtor filed a Disclosure Statement and Plan on December 1, 2020 (Docs. 285, 286 ) and a Motion to Use Cash Collateral on December 7, 2020. (Doc. 290).

It is undisputed that PNC did not approve the terms of the Amended Plan and Disclosure Statement as required by the Agreed Order. The only provision in the Amended Plan related to PNC simply indicates that, "ECF Claim Number Twenty-One needs to be amended to reflect actual balance owed as of November 1, 2020 as all but one (1) store has been recovered by PNC." (Doc. 286 at 11). Also, Article III, enumerated paragraph 4 of the Debtor's Amended Plan states:

> The ability of the Debtor to perform its obligations under the plan is based upon the assumption that its sales will increase and that it can continue to control its operating expenses. However, because performance of the Plan is dependent upon the Debtor['s] favorable future sales and operating performance, there can be no guaranty or assurance that the Debtor will be able to perform its obligations under the Plan.

(Doc. 286 at 15).

On December 15, 2020, the United States of America filed an Objection to the Debtor's Amended Plan ("IRS Objection")(Doc. 298) alleging that the Debtor demonstrated bad faith by failing to file Federal Unemployment Tax Act returns (Form 940) for 2018, Federal quarterly

3

withholding return (Form 941) for the quarter ending September 30, 2018 and Federal Corporation Income Tax returns (Form 1120) for tax years 2015, 2016, 2017 and 2018. (Doc. 298 at 2 ¶ 3).

The Debtor filed an Application for Temporary Restraining Order and Preliminary Injunction on December 20, 2020 and thereafter amended it on December 22, 2020. ("Debtor's Application")(Docs. 299, 302). The Debtor's Application indicates that contemporaneously with deeming the stay lifted, PNC filed an action in state court to place the Azalea Property in the receivership and obtained an order granting such relief. Hence, the Debtor's Application requests that this Court enjoin the state court receiver from taking control of the Azalea Property. (Doc. 302 at 3 ¶15). PNC filed Motions to Strike and Objections to the Debtor's Applications (Docs. 301, 305) setting forth its position including that the Azalea Property was no longer property of the Estate pursuant to the Notice of Debtor's Non-Compliance with the Agreed Order and that the Debtor failed to meet the requirements for injunctive relief.

## ANALYSIS

### Negotiated Settlements Should Be Enforced

Federal courts have held under a great variety of circumstances that settlements once entered into cannot be repudiated by either party and will summarily be enforced. *Scarbrough v. Long*, 112 F. Supp. 2d 609 (S.D. Miss. 2000) (citing *Bell v. Schexnayder*, 36 F. 3d 447 (5th Cir. 1994)). It is within the court's purview to recognize, encourage, and when necessary enforce settlement agreements reached by the parties. *Lyles v. Commercial Lovelace Motor Freight, Inc.,* 684 F.2d 501, 504 (7th Cir.1982); *see also*, *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368 *cert. denied,* 429 U.S. 862, 97 S. Ct. 165, 50 L. Ed. 2d 140 (1976) ("It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.") To hold

4

that a settlement agreement dictated into the record in the presence of a presiding judge is not enforceable would undermine the power of the Court. *Scarbrough* at 615.

This Court deems enforcement of settlement agreements an important judicial function. Mohajer's Application seeks to enjoin PNC from enforcing the terms of their mutually agreed upon resolution to PNC's MLS. In essence, Mohajer wants to be excused from compliance with the terms of its agreement. At the setting on the MLS, the parties engaged in discussions and reported to the Court that they reached a resolution. The principal of the Debtor was present, had the benefit of counsel and acknowledged his understanding and assent to the terms of the resolution including the deadlines and that the automatic stay would lift absent Debtor's compliance.

There is no allegation or evidence before the Court that there was any fraud, misunderstanding, mistake or coercion in the negotiation of the settlement. It is undisputed that Mohajer failed to abide by the agreed upon deadline to submit a disclosure statement and plan and did not timely file a renewed motion to use cash collateral. Nor did the Debtor obtain approval of PNC to the terms of the proposed plan or request an extension of timelines prior to the expiration thereof. It was only <u>after</u> default occurred and the Notice of Non-Compliance was placed of record, that the Debtor sought to comply and filed the request for injunctive relief. Although the Debtor contends that it should be excused from non-compliance due to extenuating circumstances, the Court disagrees. Specifically, the reasons proffered by the Debtor were either relatively short in duration, not unforeseeable or would not necessarily have prevented the Debtor from complying with the deadlines. Hence, if the Debtor had expended reasonable efforts to communicate with counsel for PNC, develop a proposed plan and prepare a cash collateral motion, compliance could and should have been accomplished well within the approximately four months that elapsed since the Agreed Order was negotiated.

This Court is not inclined to retroactively relieve the Debtor of the obligations which it negotiated and voluntarily and unequivocally agreed to. The agreement between the parties afforded the Debtor additional time to remedy the grounds for PNC's MLS. However, the Debtor's subsequent default in failing to comply with the agreed upon deadlines and the self-executing nature of the Agreed Order lifted the automatic stay as to the Azalea Property placing it outside the bankruptcy estate.

Although the policy of upholding enforcement of the parties' agreement is sufficient to deny the relief requested, this Court hereinafter expounds further upon why the Debtor's requested relief is not warranted.

Public Policy Favors Enforcing Agreed Orders

"Public policy favors finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund,* 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Waifersong Ltd., Inc. v. Classic Music Vending,* 976 F.2d 290, 292 (6th Cir. 1992)). The public and the judiciary have an interest in the expeditious, just, and final resolution of litigation. *Scarbrough* at 615. The only thing to be achieved by vacating an agreed order would be to allow movant to escape a freely negotiated settlement which is contrary to the judiciary's "policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Kukla v. Nat'l Distillers Prods. Co.,* 483 F.2d 619, 621 (6th Cir. 1973).

Enforcement of court orders is essential to the efficient administration of bankruptcy cases. This Court's docket is generally filled with hundreds of cases per week. If all or even a majority of matters required full evidentiary hearing or trial, it would create a backlog and interfere with the normal docket flow of the Court. Additionally, many matters coming before this Court can easily be

resolved by competent and diligent counsel. Hence, agreed orders are encouraged and routinely entered. The efficacy of such orders depends largely on the enforcement thereof. If this Court fails to enforce agreed orders, the incentive for the parties to enter into and abide by the terms thereof would be lost, giving way to a revolving door of parties attempting to revise the history of their bargained for agreement, thereby clogging the wheels of justice. To relieve one party of its obligations under an agreed order is to deprive the other party of the benefit of its bargain. Furthermore, failure of the Court to enforce agreed orders would likely have a chilling effect on settlements and only serve to proliferate more litigation. Hence, the Court acknowledges the strong public policy considerations supporting enforcing agreed orders and finds them applicable to the instant case.

Having noted that the agreement of the parties as memorialized in the Agreed Order is due to be enforced as a matter of law and public policy, the Court will now address the Debtor's contention that it is entitled to injunctive relief.

<u>Injunctive Relief Not Warranted</u>

The plain language of Bankruptcy Rule 7001 provides that proceedings to obtain an injunction should be commenced by Adversary Proceeding. Bankr. R. 7001 (7); see also, *In re Stacy*, 167 B.R. 243 (Bankr. N.D. Ala. 1994)(citing, *In re Smith and Sons Septic and Sanitation Service*, 88 B.R. 375 (Bankr. D. Utah 1988)(requiring strict compliance with the Rule 7001 list of actions that must be brought via adversary proceedings)). The Eleventh Circuit has held that preliminary injunctions are "extraordinary" and "drastic" remedies that should not be issued unless the moving party clearly establishes *each* of the four prerequisites. *TransUnion Risk & Alternative Data Solutions, Inc. v. MacLachlan*, 625 F. App'x 403, 407 (11th Cir. 2015). Hence, a party seeking a preliminary injunction

7

Case 18-02674    Doc 323    Filed 01/22/21    Entered 01/22/21 16:42:11    Desc Main
Document      Page 7 of 12

must establish that (1) it is likely to succeed on the merits;(2) it will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; <u>and</u> (4) that issuance of the injunctive relief will not disserve the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *Palmer v. Braun,* 287 F.3d 1325, 1329 (11th Cir. 2002) (citing *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001)).

<u>Debtor Failed to Establish Likelihood of Success on the Merits</u>

In the bankruptcy context, success on the merits has been defined as the probability of a successful plan of reorganization. *In re Kasual Kreation, Inc.*, 54 B.R. 915 (Bankr. S. D. Fla. 1985)(citing, *In re Otero Mills*, 21 B.R. 777 (Bankr. D.N.M. 1982). The Court may confirm a plan only if confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor. 11 U.S.C. §1129(a)(11). The "feasibility" requirement in 11 U.S.C. § 1129(a)(11) mandates that the proponent of a Chapter 11 plan offer <u>*concrete*</u> evidence of sufficient cash flow to fund and maintain both its operations and its obligations. *In re Trenton Ridge Investors, LLC*, 461 B.R. 440 (Bankr. S.D. Ohio 2011). A Chapter 11 Plan is not a visionary scheme but rather should involve the emergence of the reorganized debtor in a solvent condition with reasonable prospects of financial stability and success. *In re Breland*, 2015 Bankr. Lexis 395 (S.D. Ala.). Feasibility requires more than a promise, hope, or unsubstantiated prospect of success, and a determination of feasibility must be "firmly rooted in predictions based on objective fact". *In re Sanam Conyers Lodging, LLC*, 619 B.R. 784 (Bankr. N.D. Ga. 2020). *See also*, I*n re Walden Palms Condo. Ass'n*, 2020 Bankr. Lexis 3545, 2020 WL 7586502 (Bankr. M.D. Fla)("Satisfaction of the feasibility requirement of confirmation requires the plan proponent show a reasonable expectation of success . . . Plans that involve 'pipe dreams' or 'visionary schemes' are not confirmable."); I*n re Diplomat Constr., Inc*., 2009 Bankr. LEXIS 4250, 2009 WL 6498180 (Bankr. N.D. Ga.)( "The use of

the word, likely, requires the court to assess whether the plan offers a reasonable probability of success, rather than a mere possibility."). Plan proponents bear the burden of proving the confirmability by a preponderance of the evidence. *In re Cello Energy, LLC*, 2012 Bankr. Lexis 1533 (S.D.Ala.2012).

Although the Debtor initiated its request for preliminary injunction as an application and not an adversary proceeding in compliance with Rule 7001, any procedural defect is inconsequential because even upon a substantive evaluation, the Court is not convinced that injunctive relief is warranted.[2] The Debtor has not established that it is likely to succeed on the merits. In particular, the Debtor's Chapter 11 Proceeding has been pending for approximately thirty (30) months without a confirmed plan. Additionally, the Amended Plan, filed after the Agreed Order deadline, was not approved by PNC (as required by the Agreed Order) and does not provide adequate treatment of PNC's debt which has now matured. The docket also reflects a pending objection by the IRS. (Doc. 298). Further, Article III, enumerated paragraph 4 of the Amended Plan states that the ability of the Debtor to perform is based upon the *assumption* its sales will increase and there can be no assurance that the Debtor will be able to perform. (Doc 286 at 15). Hence, the plan language does not instill confidence that there is a reasonable likelihood of a successful plan of reorganization or establish that the plan is proposed in good faith. Hence, the Debtor has not shown by a preponderance of the evidence that it has a likelihood of succeeding on the merits.

<u>Allegation of Immediate Irreparable Injury Not Sufficient to Justify Relief Sought</u>

---

[2] The Court recognizes that if the relief requested was otherwise justified, it could entertain the dispute as a contested matter, deem a contested matter an adversary proceeding or treat a request for injunctive relief as a Fed R. Civ. P. 60(b)(6) motion, in the interest of the just, speedy and inexpensive determination of disputes, as long as the procedures provide due process. *See generally*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010); In re Harmon, 324 B.R. 383 (Bankr. M.D. Fla. 2005); In re Thomas, 2007 Bankr. LEXIS 1429, (Bankr. N.D. Ala.).

The party seeking an injunction bears the burden of clearly establishing not just one but all four requisites.[3] *Callahan v. United States HHS*, 939 F.3d 1251 (11th Cir. 2019). If the movant fails to demonstrate a substantial likelihood of success on the merits, the Court need not consider the remaining factors. *GeorgiaCarry. Org, Inc. v. U.S. Army Corps of Eng'rs, 788 F.3d 1318(11th Cir. 2015)*. Failure to show any of the four factors of the preliminary injunction test is fatal. *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177 (11th Cir. 2009). Hence, Courts have recognized that without any probability of prevailing on the merits, a movant's purported injuries, no matter how compelling do not justify preliminary injunctive relief. *Apotex, Inc. v. Sebelius*, 700 F. Supp. 2d 138, 139 (D.D.C.), aff'd, 384 F. App'x 4 (D.C. Cir. 2010); *Am. Bankers Ass'n v. Nat'l Credit Union Admin.* 38 F.Supp.2d 114 (D.D.C.1999)(party seeking a preliminary injunction must demonstrate a likelihood of success on the merits).

Although the Debtor contends it will suffer immediate, irreparable harm absent an injunction, that harm alone would not constitute sufficient grounds to grant the relief requested. The Debtor did not submit any financial data or projections to establish that it could operate the Azalea Property in a manner sufficient to yield any benefit to the Debtor, Creditors or the Estate. Additionally, the Debtor's schedules reflect that the value of the Azalea Property is dwarfed by the debt associated therewith (*Debtor's Schedule D*, Doc. 15 at 10-11). Further, despite the Debtor's allegation that without the continued operation of the Azalea Property, the Chapter 11 will fail, the Court does not believe the Debtor's late filed Amended Plan demonstrates a substantial likelihood of success on the merits and

---

[3] The standard for obtaining preliminary injunctive relief is a familiar one. Such relief is appropriate if—but only if—the movant shows (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. Because a preliminary injunction is an extraordinary and drastic remedy, relief may not be granted unless the movant clearly established the burden of persuasion as to the four requisites. *Callahan* at 1257.

is thus unconfirmable. The Debtor's inability to propose a confirmable plan during the (30) months that this case has languished, along with Amended Plan provisions indicating that there is no assurance that the Debtor will be able to perform its obligations demonstrates that the Debtor's prospects of succeeding are speculative at best. In sum, the Debtor's unsupported contention that it will suffer immediate, irreparable harm even if proven, is insufficient to meet the requirements for relief.

Balancing of Equities Tips in Favor of PNC

Further, in balancing the equities, the Court notes the circumstances giving rise to the Debtor's Application for injunctive relief is the result of the Debtor's own non-compliance with the terms of its agreement with PNC. It is undisputed that the Debtor did not comply with the required deadlines. Although the Debtor averred that the deadlines were missed due to extenuating circumstances, the Debtor was well aware of its obligations, had four months to comply and failed to communicate with counsel for PNC regarding acceptable plan terms or to request an extension of time. Further, the record reflects that PNC expended substantial time and expense in protecting its interest over the past six years during the pendency of two Chapter 11 bankruptcies as well as the state court receivership. Additionally, the payments to PNC under the past cash collateral orders in this case have been substantially less than the contractual payments and fees incurred by PNC. It is apparent to the Court that the Debtor has enjoyed the benefits of the automatic stay to the detriment of PNC for the nearly thirty (30) months that this case has languished absent a confirmed plan. Hence, a balancing of the equities tips in favor of PNC.

Injunction Would Not Serve the Public Interest

In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). This Court has discussed hereinabove the strong public policy favoring enforcement of settlement agreements and agreed orders. Additionally, the Debtor has not presented any argument that there is any overriding public interest favoring its request. To the contrary, the Court believes that the public interest is best served by the efficient and expeditious resolution of matters. Therefore, although the failure of the Debtor to meet the other requisites to obtain a preliminary injunction is outcome determinative, the Court nonetheless recognizes that the issuance of an injunction in this matter would be adverse to public interests.

## CONCLUSION

For the reasons noted hereinabove, this Court finds that the terms of the Agreed Order between the parties resolving PNC's Motion for Relief should be upheld and enforced. Consequently, upon the Debtor's failure to comply with the terms thereof as memorialized in the Agreed Order, the automatic stay lifted and the Azalea Property was and is no longer part of the Bankruptcy Estate. Additionally, upon evaluation of the previously enumerated factors, which must all be met to issue an injunction, the Debtor has not established that the requested relief is warranted. Accordingly, the Debtor's Application for Temporary Restraining Order and Preliminary Injunction (Doc. 299) as Amended (Doc. 302) is hereby DENIED.

Dated: January 22, 2021

JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE

Case 18-02674    Doc 323    Filed 01/22/21    Entered 01/22/21 16:42:11    Desc Main
Document      Page 12 of 12